STATE of Utah, Plaintiff and Petitioner,

v.

Joseph C. MIRQUET, Defendant
and Respondent.

No. 930098.

Supreme Court of Utah.

March 27, 1996.

Jan Graham, Atty. Gen., Christine Soltis, David B. Thompson, Asst. Attys. Gen., Salt Lake City, for plaintiff.

Milton T. Harmon, Nephi, for defendant.

## AMENDED OPINION

STEWART, *Associate Chief Justice:*

This Court granted certiorari to review a Court of Appeals decision affirming the trial court's suppression of physical evidence obtained as a result of what both courts held to be a custodial interrogation of defendant in which no *Miranda*[1] warning was given. *State v. Mirquet,* 844 P.2d 995, 1001 (Utah Ct.App.1992), *cert. granted,* 857 P.2d 948 (Utah 1993). We affirmed the Court of Appeals' decision and issued our opinion on June 30, 1995. Subsequently, the State filed a petition for rehearing, primarily to seek clarification of the standards determining when a person who is interrogated by police prior to an actual arrest is deemed to be "in custody" and entitled to a *Miranda* warning. We granted the State's petition to amend our initial opinion in light of *Stansbury v. California,* —— U.S. ——, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), and to make explicit that where an officer has made an uncommunicated decision to arrest a detained person, accusatory questioning of that person does not necessarily require *Miranda* warnings. As we did in our initial opinion, we affirm the decision of the Court of Appeals.

Utah Highway Patrol Officer Paul Mangelson stopped defendant Joseph C. Mirquet for speeding on Interstate 15 near Nephi, Utah. Officer Mangelson asked Mirquet to enter the patrol car to observe the speed reading on the radar unit. Inside the patrol car, the

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

officer smelled burned marijuana on Mirquet and told him: "It's obvious to me you've been smoking marijuana. You know, there's no question in my mind. Would you like to go to the car and get the marijuana, or do you want me to go get it?" In response, Mirquet went to his car, retrieved two marijuana cigarettes, and gave them to Mangelson. Mangelson then searched the car and found cocaine, marijuana, and drug paraphernalia.

The State charged Mirquet with possession of cocaine and possession of marijuana with intent to distribute, both third degree felonies. *See* Utah Code Ann. § 58–37–8(2)(a)(i). Mirquet moved to suppress the marijuana and cocaine, asserting that he was entitled to a *Miranda* warning when Officer Mangelson told him to retrieve the marijuana. The trial court ruled that Mirquet was "in custody" at the time he was told to retrieve the marijuana and entitled to a *Miranda* warning and that because the warning was not given, the evidence should be suppressed.

On an interlocutory appeal to the Court of Appeals, the State argued that the trial court had applied an incorrect legal standard in ruling that Mirquet was "in custody" for *Miranda* purposes. The Court of Appeals agreed, vacated the suppression order, and remanded to the trial court for reconsideration in light of *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984), which held that the standard for determining when a defendant is in custody for *Miranda* purposes is whether the defendant's freedom of action is curtailed to "a degree associated with a formal arrest."

On remand, the trial court relied principally on the accusatory nature of Officer Mangelson's questioning, one of four factors set out in *Salt Lake City v. Carner*, 664 P.2d 1168, 1171 (Utah 1983), for determining custody issues, and again ruled that Mirquet was in custody when he was directed to retrieve the marijuana. The trial court again ordered the cocaine and marijuana suppressed. On the ensuing appeal to the Court of Appeals, the State argued that the trial court had again applied an incorrect standard in determining custody when it ruled that custody was established if "a reasonable person would probably not feel free to leave under the circumstances." The State also argued that the trial court erred in suppressing physical evidence obtained as a result of an interrogation that violated *Miranda*.

Although the Court of Appeals acknowledged that the trial court had failed to recite the "precise words of the custody standard," the Court of Appeals nevertheless evaluated the undisputed facts in the case under the *Berkemer* standard, as applied in light of the *Carner* factors, and held that Mirquet was in custody when the interrogation occurred. *Id.* at 1000–01. The court declined to reach the issue of whether physical evidence derived from an interrogation conducted without *Miranda* warnings should be suppressed because that issue had not been raised in the trial court.

The State now argues that because the trial court applied an incorrect standard for deciding the custody issue, the Court of Appeals should have simply reversed and remanded for reconsideration by the trial court. The State also argues that the Court of Appeals erred in drawing inferences from the undisputed facts on the custody issue and, in effect, making additional findings of fact. It is also the State's position that this Court should hold that physical evidence derived from an interrogation is admissible, absent actual coercion.

■ The standard for determining when a defendant is "in custody" for *Miranda* purposes is well-settled. "[T]he safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer*, 468 U.S. at 440, 104 S.Ct. at 3150 (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)); *see also State v. East*, 743 P.2d 1211, 1212 (Utah 1987). More specifically, *Miranda* warnings are required whenever the circumstances of an interrogation are such that they "exert[ ] upon [the] detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Berkemer*, 468 U.S. at 437, 104 S.Ct. at 3149.

■ The "not free to leave" standard, on the other hand, determines whether a person has been "seized" under the Fourth Amendment to the United States Constitution. *United States v. Mendenhall,* 446 U.S. 544, 555, 100 S.Ct. 1870, 1877–78, 64 L.Ed.2d 497 (1980). That standard is broader than the *Miranda* standard. A person may be "seized" for Fourth Amendment purposes but not be "in custody" for Fifth Amendment purposes. Whether one is "in custody" for *Miranda* purposes depends on an objective assessment of the circumstances of the interrogation with respect to the compulsory nature of the interrogation rather than on the subjective intent or suspicions of the officers conducting the examination. *Beckwith v. United States,* 425 U.S. 341, 345–48, 96 S.Ct. 1612, 1615–17, 48 L.Ed.2d 1 (1976). In the context of a routine traffic stop, the driver and the passengers, even though they have been stopped and, at least momentarily, are not free to leave, are not "in custody" for *Miranda* purposes. *Berkemer,* 468 U.S. at 440, 104 S.Ct. at 3150; *Salt Lake City v. Womack,* 747 P.2d 1039, 1042 (Utah 1987); *East,* 743 P.2d at 1212; *see also Pennsylvania v. Bruder,* 488 U.S. 9, 11, 109 S.Ct. 205, 207, 102 L.Ed.2d 172 (1988) (per curiam). That is true even though an officer engages in some degree of accusatory questioning of the driver during the course of the stop and even though the officer may have a subjective, unstated intent to arrest the driver. *Berkemer,* 468 U.S. at 442, 104 S.Ct. at 3151.

Nevertheless, there may be occasions when a defendant is entitled to a *Miranda* warning prior to a formal arrest. *Berkemer* recognized that point in refusing to make formal arrest an absolute bright line test for determining custody under *Miranda.* 468 U.S. at 440, 104 S.Ct. at 3150. If the right to a *Miranda* warning never attached until a formal arrest, a person's right to a *Miranda*

warning and the protection it affords the privilege against self-incrimination could be subverted by an intentional delay in making a formal arrest. *Id.* Thus, the standard is whether a defendant's freedom of action is curtailed to an extent associated with a formal arrest.

■ To guide the decision as to when one is in custody and entitled to a *Miranda* warning prior to a formal arrest, *Salt Lake City v. Carner,* 664 P.2d 1168, 1171 (Utah 1983), set out four factors to be evaluated: "(1) the site of interrogation; (2) whether the investigation focused on the accused; (3) whether the objective indicia of arrest were present; and (4) the length and form of interrogation." [2]

In the instant case, the trial court erred in applying the "not free to leave" standard as a justification for its ruling. The Court of Appeals sustained the trial court but applied the *Berkemer* standard, construed in light of the *Carner* factors, and then applied those standards to the facts of the case, instead of remanding for the trial court to do so. The court stated, "[W]here, as here, the evidence is essentially undisputed and the undisputed facts support a determination that defendant was in custody, the [district court's] mere failure to recite the precise words of the custody standard does not demand a remand for more specific findings." *Mirquet,* 844 P.2d at 999.

■ The undisputed evidence to which the Court of Appeals referred demonstrated that Mirquet was in the patrol car when Officer Mangelson told him that it was clear he had been using an illegal drug, and that either Mirquet should retrieve the drugs from his car or the officer would. Thus, Officer Mangelson made a direct accusation of illegal conduct wholly unrelated to the reason for the traffic stop and told Mirquet that if he

---

**2.** *Carner* addressed the issue of custodial interrogation in the context of Article I, section 12 of the Utah Constitution. 664 P.2d at 1172. Nevertheless, although we *have* employed *Carner* to decide the question of when a suspect is in custody for purposes of *Miranda* analysis under the Fifth Amendment, *e.g., Wood,* 868 P.2d at 81–82; *State v. Kelly,* 718 P.2d 385, 391 (Utah 1986), this Court has never specifically held that *Miranda*-type warnings are required under the Utah

Constitution. *See Sandy City v. Larson,* 733 P.2d 137, 141 (Utah 1987) (Durham, J., concurring and dissenting); *State v. Ball,* 685 P.2d 1055, 1061 (Utah 1984). Thus, to the extent that *State v. Wood,* 868 P.2d at 82 & n. 2, and other cases state that *Carner* afforded broader protections than those available under United States Supreme Court decisions applying *Miranda* law, we disavow those statements.

did not retrieve the incriminating contraband, the officer would. The officer's direction to Mirquet was intended to compel Mirquet to take action to produce incriminating evidence. That order, apart from the accusation of illegal drug use, was itself coercive.

In holding that Mirquet was in custody, the Court of Appeals, applying the *Carner* factors, found that (1) the site of the interrogation was inside the police car; (2) Officer Mangelson's investigation focused solely on defendant; (3) the objective indicia of arrest were present; (4) the form of the "interrogation" evidenced a clear coercive intent on the part of the officer to prompt Mirquet to produce incriminating contraband; and (5) the place of the interrogation added to the coercive environment. The facts support both these subordinate conclusions and the ultimate conclusion that Mirquet was "in custody."

In its petition for rehearing, the State contends that the findings in this case were arguably incompatible with the United States Supreme Court's decision in *Stansbury v. California,* —— U.S. ——, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). *Stansbury* held that an officer's unarticulated subjective focus on a particular suspect is not relevant to the determination of whether that suspect is in custody for *Miranda* purposes. —— U.S. at —— – ——, 114 S.Ct. at 1529–31, 128 L.Ed.2d at 299–301. However, it is clear, as it was in our earlier opinion, that this case does not involve an unarticulated suspicion focused on Mirquet. Rather, Officer Mangelson explicitly stated his conclusion of illegal conduct and, in effect, directed Mirquet to retrieve incriminating evidence from his car.

▉▉▉ The State also argues that *Carner* unduly emphasizes accusatory questioning in determining custody and that the trial court relied almost exclusively on that factor in making its in-custody determination. Although under *Carner* the accusatory nature of questioning is a relevant factor in determining whether a person is in custody, we recognize that it is not dispositive of the issue. Moreover, whether the interrogating officer entertains subjective suspicions that

the subject has committed a crime is irrelevant. Indeed, even if a person is a suspect and accusatory questioning takes place in a police station, the person is not necessarily "in custody" if there is no arrest or restriction on his freedom of movement and the interrogated person is free to terminate the interview and leave. *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977); *see also Thompson v. Keohane,* —— U.S. ——, —— – ——, 116 S.Ct. 457, 461–62, 133 L.Ed.2d 383, 395–96 (1995). The Court in *Mathiason* stated:

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because ... the questioned person is one whom the police suspect.

*Id.* at 495, 97 S.Ct. at 714.

Although many encounters between citizens and police, especially in the context of a traffic stop, can give rise to accusatory-type questioning, that factor alone does not dispositively determine whether a person is in custody. The necessary coercive environment cannot be established by accusatory questioning alone. Neither *Carner* nor any of our other cases have held otherwise. Nevertheless, accusatory questioning is a relevant factor in the overall custody determination. In this case, the accusatory questioning—in truth a virtual command—was to retrieve evidence of a crime that was clearly incriminating and, under all the circumstances, strongly supports the conclusion that Mirquet was in custody.

▉▉▉ With respect to the State's arguments that the Court of Appeals erred in (1) not remanding the case to the trial court to apply the correct standards to the facts of the case and (2) making findings of fact that have no support in the record, we disagree. An appellate court can appropriately apply governing legal standards to undisputed facts to

dispose of a matter rather than remanding for a trial court to do so. *See Flying Diamond Oil v. Newton Sheep Co.,* 776 P.2d 618, 627 (Utah 1989). When credibility is not an issue as to underlying facts or a trial judge has already made necessary credibility assessments, the material facts are not disputed, and there is no additional evidence relevant to the dispositive issues that can or should be adduced, an appellate court is in as good a position as the trial court to apply the governing rules of law to the facts. This is what occurred here, and the Court of Appeals did not err.

 As for the State's contention that the Court of Appeals erred in making its own findings of fact, any such error was insignificant. Specifically, the State contends that the Court of Appeals found that when defendant made his unaccompanied trip back to his car to retrieve the marijuana, defendant's car and the officer's car were in close proximity, the officer was able to maintain constant surveillance, and little time elapsed between defendant's exit of the patrol car and his return with the marijuana. The State correctly contends that the trial court made no such findings of fact and those propositions of fact were not part of the undisputed facts before the court.

The Court of Appeals relied on those "facts" to rebut the argument of a dissenting judge that Officer Mangelson, in allowing defendant to make an unaccompanied trip to his car to retrieve the marijuana, did not have defendant in custody at the time he was told to retrieve the marijuana or the officer would. Although there is some evidence that inferentially tends to support these "findings," they are really based on what *usually* occurs at a roadside stop, not on what the record shows in fact occurred. Were these asserted facts critical to the court's ultimate disposition, a reversal and remand to the trial court would be necessary, but they are not critical. The factual gap is bridged by the trial court's finding, based on Officer Mangelson's unchallenged affidavit, that a reasonable person would not have felt free to leave the area. Although, as stated, such a conclusion is not sufficient to establish that Mirquet was "in custody," that evidence, in combination with the other evidence referred to above, established that Mirquet was "in custody" when told to retrieve the narcotics even though a formal arrest had not yet occurred.

 We do not address the State's argument that physical evidence derived from an un-Mirandized defendant while in custody should not be suppressed because the issue was not raised in the trial court.

Affirmed.

ZIMMERMAN, C.J., and HOWE, DURHAM and RUSSON, JJ., concur in STEWART's Associate C.J., opinion.