**STATE of Utah, Plaintiff and Appellee,**

v.

**Mark Joseph BAKER, Defendant and Appellant.**

No. 910650–CA.

Court of Appeals of Utah.

Nov. 2, 1994.

Robert K. Heineman, Salt Lake Legal Defender Ass'n, Salt Lake City, for appellant.

Jan Graham, State Atty. Gen., J. Kevin Murphy, Asst. Atty. Gen., Salt Lake City, for appellee.

Before BILLINGS, P.J., and JACKSON and ORME, JJ.

## OPINION

BILLINGS, Presiding Judge:

### FACTS

Defendant Mark Baker was charged with raping and sodomizing his stepdaughter, H.H., from July through October, 1987. She was five to six years old at the time.

At trial, in response to the court's inquiry during voir dire, Juror No. 19 related that his sister had been raped and sodomized when she was eight years old. He then indicated that he would be unable to remain impartial to evidence involving sexual abuse of a child. Upon being asked essentially the same question, he withdrew his admission of bias. Defendant moved to remove Juror No. 19 for cause and the motion was denied.

The jury found defendant guilty of rape of a child and sodomy on a child, both first-degree felony offenses, and he was sentenced to two concurrent fifteen-year-to-life terms. On appeal, defendant claims, inter alia, he is entitled to reversal because he was tried by a biased jury. We agree defendant's jury was biased and reverse on that basis.[1]

## I. JURY BIAS

■ The right to trial by an impartial jury is guaranteed in Article I, section 12 of the Utah Constitution. Whether to dismiss a prospective juror for cause is within the sound discretion of the trial court. "When reviewing such a ruling, we reverse only if the trial court has abused its discretion." *State v. Woolley*, 810 P.2d 440, 442 (Utah App.1991). However, the exercise of the trial court's discretion in selecting a fair and impartial jury must be viewed "in light of the fact that it is a simple matter to obviate any problem of bias simply by excusing the prospective juror and selecting another." *Jenkins v. Parrish*, 627 P.2d 533, 536 (Utah 1981).

■ Rule 18(e)(14) of the Utah Code of Criminal Procedure permits for-cause challenges to prospective jurors when "a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging." Utah

---

1. Because we reverse on defendant's first claim of error, we do not reach his six substantial remaining claims (including an ineffective assistance of counsel claim delineating 12 instances of counsel error).

R.Crim.P. 18(e)(14). Whether a prospective juror's state of mind mandates that the court dismiss the juror for cause depends on whether that juror has formed "'strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them; which will combat that testimony and resist its force.'" *State v. Hewitt*, 689 P.2d 22, 25 (Utah 1984) (quoting *State v. Bailey*, 605 P.2d 765, 767 (Utah 1980)).

■■■ We recently outlined the procedure trial judges must employ to identify partial jurors in *State v. Woolley*. In the first instance, the trial judge must conduct voir dire to probe for potential bias. *Woolley*, 810 P.2d at 444. If probing reveals potential bias, a trial judge must conduct rehabilitative inquiry until the inference of bias is rebutted. *Id.* "The level of investigation necessary once voir dire reveals potential juror bias will vary from case to case and is necessarily dependent on the juror's responses to the questions asked." *Id.* at 445.

In the instant case, the trial judge probed the prospective jurors for potential bias by asking whether they personally, or anyone within their immediate family, had been the victim of a sexual crime. In response to the judge's inquiry, Juror No. 19 indicated that his sister had been raped and sodomized when she was eight years old. The trial judge then asked Juror No. 19, and the two other jurors who had responded affirmatively to the judge's initial probe, whether they could be "fair and impartial and set those things aside and give the State and the defendant a fair and impartial trial." All three jurors indicated they could not.[2]

■■■ Juror No. 19 affirmatively indicated his inability to remain impartial in light of his sister's experience as a victim of a sexual crime. He thus demonstrated actual bias rather than merely acknowledging circumstances from which the court could infer bias. *Cf. Woolley*, 810 P.2d at 441–42, 444 (finding inference of bias arose when juror indicated he had been victim of similar crime).

Utah law requires trial courts to expend significant effort in rehabilitating a potential juror to whom even an inference of bias has attached. *See, e.g., State v. Julian*, 771 P.2d 1061, 1065–66 (Utah 1989) (prospective juror who indicated predisposition to believe victim's testimony successfully rehabilitated by twenty questions); *State v. Jonas*, 793 P.2d 902, 905–07 (Utah App.1990) (prospective juror who had been victim of similar crime successfully rehabilitated by ten followup questions); *Salt Lake City v. Tuero*, 745 P.2d 1281, 1283 (Utah App.1987) ("significant efforts" made to determine whether prospective juror whose wife was victim of similar crime could remain unbiased). When a potential juror expressly voices an inability to impartially evaluate the evidence, the trial court has an even greater rehabilitative burden. *See State v. Jones*, 734 P.2d 473, 475 (Utah 1987); *State v. Hewitt*, 689 P.2d 22, 26 (Utah 1984); *State v. Brooks*, 631 P.2d 878, 884 (Utah 1981); *Jenkins v. Parrish*, 627 P.2d 533, 536 (Utah 1981).

■■■ After Juror No. 19 and two other jurors indicated they could not be impartial, the trial court did not address them individually, but addressed them en masse, saying:

Now, let me again indicate to the three of you—and of course we don't know what yours involved, sir—but this is a sensitive

---

2.    THE COURT: ... Let me also ask you, members of the jury, if any of you or your immediate family, which I have defined to you, have been the victims of a sexual crime? And by "sexual crimes" I do not only mean of course as far as juveniles, I mean rape, incest, sodomy, anything of that type, whether it was as a minor or as an adult. If any of you or any member of your immediate family have been the victim of a sexual crime, please so indicate by raising your hand.
(Juror Nos. 15, 17 and 19 indicated.) ...
JUROR NO. 19: My sister was raped and sodomized when she was eight years old.

THE COURT: Of course I assume that she is older now and it's been disposed of.
JUROR NO. 19: Yes. It's been about ten years ago.
THE COURT: Again, let me ask you: The fact that this has taken place in your life, I give the same admonition to you. We note that you have had experiences of this type, but we still ask you to be fair and impartial and set those things aside and give the State and the defendant a fair and impartial trial. If any of you could not do so, please indicate by raising your hand.
(Juror Nos. 15, 17 and 19 indicate.)

area as far as the law is concerned, but it is an area [in] which we must have jurors that are fair and impartial. We must have jurors that would be willing to sit and listen to the evidence and weigh that evidence fairly.

But again I say that we do ask you to set aside experiences in your life so that you can listen to the evidence and make an impartial decision. Again I ask if there is any of you who cannot do that, please indicate by raising your hand.

(Juror Nos. 15 and 17 indicated.)

The trial judge's soliloquy, directed to no juror in particular, amounts to a repetition of prior admonishments and a plea that the prospective jurors heed the admonitions. It does not rise to the level of the extensive rehabilitative inquiry Utah law demands. *See Bailey*, 605 P.2d at 768 (holding one rehabilitative question inadequate to rebut potential bias on part of prospective juror); *Woolley*, 810 P.2d at 447 (stating one general question, without personalized dialogue or individual probing, insufficient to rehabilitate juror to whom inference of bias had attached).

■ Furthermore, "inferences of bias are not to be confused with actual bias as evidenced by a prospective juror's 'attitude of bias' or 'strong feelings'.... Once such strong feelings are revealed, a prospective juror may not sit, even if the prospective juror later asserts that he or she can render an impartial verdict." *Woolley*, 810 P.2d at 449 (Bench, J., dissenting); *accord Jones*, 734 P.2d at 475 (holding prospective jurors' later statements indicating impartiality could not obviate strong inference of bias arising from earlier statements); *Hewitt*, 689 P.2d at 26 ("A statement made by a prospective juror that he intends to be fair and impartial loses its meaning in light of other testimony of facts that suggest a bias."); *Brooks*, 631 P.2d at 884 ("[W]hen a juror has expressed an attitude indicating prejudice or bias, such cannot be attenuated by the juror's determination that he can render an impartial verdict. The juror cannot be the judge of his qualifications; this function is the responsibility of the trial court."); *Jenkins*, 627 P.2d at 536 (holding juror's admission of bias

should have resulted in successful challenge for cause even though juror expressed desire and ability to remain fair and impartial); *Crawford v. Manning*, 542 P.2d 1091, 1092 (Utah 1975) (holding trial court committed prejudicial error in refusing to dismiss juror who expressed strong feelings about the matter, even though she stated she could render verdict free of bias).

Based upon the foregoing, we hold that the trial court committed error by refusing to dismiss Juror No. 19 for cause.

## II. APPLICATION OF *STATE V. MENZIES*

We next determine the consequence of the trial court's error. In March 1994, almost three years after defendant's May 1991 trial, the Utah Supreme Court issued *State v. Menzies*, 235 Utah Adv.Rep. 23, 1994 WL 110861 (Utah 1994). *Menzies* overruled a line of cases, spawned by *Crawford v. Manning*, 542 P.2d 1091 (Utah 1975), which firmly established an "automatic reversal" approach to erroneous for-cause rulings. Pursuant to these cases, whenever a criminal defendant removed peremptorily a prospective juror who should have been excused for cause, and exhausted his or her peremptory challenges, the court presumed prejudicial error. The defendant was therefore entitled to a new trial. *See, e.g., State v. Moore*, 562 P.2d 629, 630–31 (Utah 1977); *State v. Bailey*, 605 P.2d 765, 768 (Utah 1980); *Jenkins v. Parrish*, 627 P.2d 533, 536–37 (Utah 1981); *State v. Brooks*, 631 P.2d 878, 883 (Utah 1981); *State v. Hewitt*, 689 P.2d 22, 25 (Utah 1984); *State v. Jones*, 734 P.2d 473, 474 (Utah 1987); *State v. Bishop*, 753 P.2d 439, 451 (Utah 1988); *State v. Gotschall*, 782 P.2d 459, 461 (Utah 1989); *State v. Julian*, 771 P.2d 1061, 1064 (Utah 1989); *State v. Carter*, 233 Utah Adv.Rep. 18, 29, 1994 WL 63554 (Utah 1994).

The *Menzies* court disavowed this presumptive approach and adopted the majority rule, upheld by the United States Supreme Court, that "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the [Constitution] was violated." *Menzies*, 235 Utah Adv.Rep. at 24. In order to obtain reversal, the court

proclaimed, "a defendant must demonstrate prejudice, *viz.*, show that a member of the jury was partial or incompetent." *Id.*

Defendant argues that the *Menzies* standard cannot apply to him retroactively, advancing the proposition that "[w]hen a new rule of criminal procedure constitutes a clear break with the past, it is not generally applied retroactively." *State v. Hoff,* 814 P.2d 1119, 1123–24 (Utah 1991) (declining to apply *State v. Gibbons,* 740 P.2d 1309 (Utah 1987) strict compliance standard retroactively); *see also State v. Lafferty,* 749 P.2d 1239, 1260–61 (Utah 1988) (adding two requirements to penalty phases of capital trials, stating "[t]hese requirements shall apply prospectively only"); *State v. Jonas,* 725 P.2d 1378, 1380 (Utah 1986) (declining to apply new *State v. Long,* 721 P.2d 483 (Utah 1986) standard for cautionary jury instructions to defendant, who was tried before *Long* was decided, noting *Long* was "specifically limited in its application to cases tried after date of issuance"). Therefore, defendant claims he is entitled to the benefit of the *Crawford-*and-progeny automatic reversal rule, firmly entrenched in Utah jurisprudence at the time he was tried.

We disagree. When an appellate decision establishes a new rule of criminal procedure, courts have not permitted defendants tried before the rule to benefit from the trial court's failure to adhere to it. *See Hoff,* 814 P.2d at 1123–24; *Lafferty,* 749 P.2d at 1260–61; *Jonas,* 725 P.2d at 1380. This appeal does not present such a situation. The *Menzies* decision did not alter the procedure by which trial courts impanel juries. Instead, *Menzies* altered the consequence on appeal of a trial court's failure to adhere to the articulated procedural standard. Pre–*Menzies,* a trial court's erroneous failure to remove a juror for cause mandated automatic reversal, while post-*Menzies* it does not.

The case more akin to the situation before us is *Salt Lake City v. Womack,* 747 P.2d 1039 (Utah 1987). In *Womack,* the defendant was convicted of driving under the influence of alcohol, in part upon evidence obtained from field sobriety tests administered prior to her arrest. She argued on appeal

that the police compelled her to take the roadside field sobriety tests and thus forced her to give evidence against herself in violation of her right against self-incrimination under Article I, Section 12 of the Utah Constitution. *Id.* at 1040–41. At the time of her arrest and trial, the issue was governed by *Hansen v. Owens,* 619 P.2d 315 (Utah 1980), in which the Utah Supreme Court held that compelling criminal defendants to provide a handwriting exemplar violated their right against self-incrimination. By the time *Womack* appealed her conviction, the court had explicitly overruled *Hansen.* In *American Fork City v. Crosgrove,* 701 P.2d 1069 (Utah 1985), the court articulated a new rule that criminal defendants may invoke the privilege against self-incrimination only with respect to evidence that is testimonial or communicative in nature. *See Womack,* 747 P.2d at 1042. Thus, under *Crosgrove,* Womack's privilege against self-incrimination was not violated by requiring her to perform field sobriety tests.

Womack argued on appeal that *Crosgrove* could not be applied to her because of state and federal constitutional prohibitions against ex post facto laws. The court rejected this argument, stating: "The constitutional ban on ex post facto laws applies only to legislative enactments." *Id.* The court emphasized that "[t]he judicial overruling of a prior decision and the application of the new precedent do not constitute an ex post facto law." *Id.* Therefore, the court had no difficulty retroactively applying *Crosgrove* to Womack, even though *Crosgrove* provided a clear break from well-established precedent. *Id.; see also State v. East,* 743 P.2d 1211, 1211 (Utah 1987) (dismissing defendant's retroactive application argument with one sentence: "East's argument that the holding in *American Fork City,* which overruled *Hansen v. Owens,* ... cannot be applied retroactively is without merit.").

■ The *Menzies* decision, like the *Hansen* decision applied retroactively in *Womack* and *East,* changes the result on appeal of the trial court's error. It does not establish new trial court procedure. Therefore, we follow *Menzies* in our analysis of defendant's claims.

## III. REVERSIBLE ERROR
## OR INVITED ERROR

Unfortunately, *Menzies* does not answer the question this appeal presents. *Menzies* establishes the rule that "[t]o prevail on a claim of error based on the failure to remove a juror for cause, a defendant must demonstrate prejudice, *viz.,* show that a member of the jury was partial or incompetent." *Menzies,* 235 Utah Adv.Rep. at 24. In *Menzies,* however, all five objected-to prospective jurors were removed by peremptory challenge. In the instant case, the objected-to juror was not removed by peremptory challenge. Instead, Juror No. 19 sat on the jury that convicted defendant, even though he had openly admitted he would be unable to evaluate evidence involving rape and sodomy of a child impartially. Therefore, defendant need only point to the manifest partiality of Juror No. 19 to demonstrate prejudice.

However, the subsequent question—whether defendant is therefore entitled to reversal—is not addressed in *Menzies,* and prior Utah authority is of little assistance. In no prior Utah case has a defendant exhausted his or her peremptory challenges while allowing a patently biased objected-to-for-cause juror to remain on the jury, and then complained on appeal that he or she was tried by a biased jury. The question before us is thus one of first impression: Is a defendant who exhausts his or her peremptory strikes, but who does not remove a juror who should have been removed for cause, entitled to reversal on appeal because he or she was tried by a biased jury?

The State urges that defendant waived his right to complain of an impartial jury by not peremptorily striking Juror No. 19. To hold otherwise, the State argues, would be to "invite error." The State relies on *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), for this proposition.

In *Ross,* the defendant resorted to one of his peremptory challenges to remove a juror whom the trial court should have excused for cause, ultimately using all nine of the peremptory challenges allowed under Oklahoma

law. None of the twelve jurors who actually sat on the jury had been challenged for cause by the defendant. The United States Supreme Court upheld the Oklahoma Court of Criminal Appeals' determination that "'as there is nothing in the record to show that any juror who sat on the trial was objectionable, we are unable to discover any grounds for reversal.'" *Ross,* 487 U.S. at 85, 108 S.Ct. at 2276 (quoting *Ross v. State,* 717 P.2d 117, 120 (Okla.Crim.App.1986)). The Court stated: "Had [the objected-to juror] sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court's failure to remove [the juror] for cause, the sentence would have to be overturned." *Id.,* 487 U.S. at 86, 108 S.Ct. at 2277. However, the Court noted, "We have long recognized that peremptory challenges are not of constitutional dimension." *Id.* at 88, 108 S.Ct. at 2278. Thus "the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Id.* at 89, 108 S.Ct. at 2279.

The Court then undertook an analysis of Oklahoma law, determining:

It is a long settled principle of Oklahoma law that a defendant who disagrees with the trial court's ruling on a for-cause challenge must, in order to preserve the claim that the ruling deprived him of a fair trial, exercise a peremptory challenge to remove the juror. Even then, the error is grounds for reversal only if the defendant exhausts all peremptory challenges and an incompetent juror is forced upon him.

*Id.* The Court concluded that this "waiver rule" did not violate the defendant's due process rights, emphasizing: "[T]here is nothing arbitrary or irrational about such a requirement, which subordinates the absolute freedom to use a peremptory challenge as one wishes to the goal of empaneling an impartial jury." *Id.*

Thus, *Ross* establishes that a state may, without offending due process, require criminal defendants to remove peremptorily a juror challenged for cause in order to preserve a claim of error on appeal.[3] The relevant

<hr>

**3.** *Ross* does not treat the potentially troubling

situation in which the number of jurors chal-

inquiry remains whether Utah law imposes such a requirement. Defendant asserts that "at the time of trial Utah law had no requirement that a defendant exercise peremptory challenges to remove a juror who should have been removed for cause." He concedes that "[i]n the usual case, a peremptory would be used on a for-cause juror in order to obtain a fairer jury and a greater chance of acquittal." However, he claims that "[t]his practical result is in no way compelled by Utah law." We agree.

■ Utah law to date imposes only one clear requirement on criminal defendants who claim on appeal that they were prejudiced by the trial court's failure to excuse for cause a prospective juror: they must show their peremptory strikes were exhausted. In *People v. Hopt*, 4 Utah 247, 250, 9 P. 407, 408 (1886), *aff'd*, 120 U.S. 430, 442, 7 S.Ct. 614, 617, 30 L.Ed. 708 (1887), the defendant challenged three prospective jurors for cause, and the trial court disregarded all three challenges. Two of the challenged jurors were subsequently removed peremptorily, while the third sat. On appeal, defendant claimed he was prejudiced by the court's failure to remove the objected-to jurors for cause. With respect to the juror who sat, the court noted that "when the jury was sworn the defendant still had three peremptory challenges remaining to him. Had he chosen, he could have challenged the juror peremptorily whom he challenged for cause." *Id.* 9 P. at 408. The court concluded, "Until he had exhausted his peremptory challenges he could not complain." *Id.*

The subsequent case of *State v. Chealey*, 100 Utah 423, 427, 116 P.2d 377, 379 (1941), approves the *Hopt* court's analysis. In *Chealey*, the trial court refused to remove a prospective juror whom the defendant had challenged for cause. The defendant removed the juror peremptorily and claimed error on appeal. The court held that the trial court should have sustained the defendant's for-cause challenge, but that the error was not prejudicial. *Id.* "It is not shown," the court stated, "that the defendant had exhausted his peremptory challenges or that this challenge required him to do so." *Id.* Because "[t]he

use of a peremptory challenge upon the juror objected to, left him with challenges which he might have used to remove other jurors had he desired to do so," the defendant was not prejudiced by the trial court's erroneous ruling. *Id.*

Finally, the rule of *Hopt* and *Chealey*, that criminal defendants must exhaust their peremptory challenges in order to show prejudice from an erroneous for-cause ruling, was applied post-*Crawford* in *State v. Wetzel*, 868 P.2d 64 (Utah 1993). In *Wetzel*, the court held that because the record did not indicate how the defendant exercised his peremptory challenges, or whether he had exercised all of them, the defendant had not established prejudice. Therefore, the automatic reversal rule of *Crawford* did not apply. *Id.* 868 P.2d at 66–67. "This rule," the court stated, "presupposes that the defendant used all his peremptory challenges; otherwise, the defendant will have suffered no prejudice." *Id.*

It is therefore clear that in a line of cases unbroken by the automatic reversal rule announced in *Crawford*, Utah law has consistently required that criminal defendants exhaust their peremptory challenges before the trial court's failure to excuse for cause a biased juror will be deemed prejudicial. However, in no case has it been announced *how* defendants must use these challenges. While it may be inferred that criminal defendants are expected to remove peremptorily jurors they have challenged for cause, Utah law has by no means made this requirement clear to the extent that we can say defendant invited the error of which he now complains.

■ With respect to the instant case, the doctrine of invited error is particularly inapposite. When defense counsel made the tactical decision to peremptorily remove prospective jurors he deemed more potentially damaging to defendant than Juror No. 19, the *Crawford* automatic reversal rule governed; defendant need only have exhausted his peremptory challenges in order to demonstrate prejudice and obtain a new trial. He could not have known that by the time of his appeal *Menzies* would govern, and that his greatest chance of showing prejudice by

lenged for cause exceeds the defendant's allot-

ment of peremptory challenges.

the trial court's erroneous ruling would therefore be to leave Juror No. 19 on the jury. *Cf. Menzies*, 235 Utah Adv.Rep. at 30 (Stewart, Assoc. C.J., concurring) (emphasizing that reversal may still be required if defendant can demonstrate actual prejudice in having lost peremptory challenge due to erroneous for-cause ruling, but conceding "it will be much more difficult to establish reversible error under this rule").

Clearly, then, defendant was not attempting to manipulate the system when he used his peremptory challenges to strike prospective jurors other than Juror No. 19. Rather, he was forced by the trial court's error to make a difficult choice between removing Juror No. 19 and removing other, potentially more adverse, prospective jurors.[4] The choice he made does not run afoul of the doctrine of invited error.[5] *See State v. Smith*, 776 P.2d 929, 932 (Utah App.1989).

Our decision today is consistent with opinions from other jurisdictions that have reversed convictions rendered by a jury on which an objectionable juror sat. *See, e.g., People v. Stremmel*, 258 Ill.App.3d 93, 197 Ill.Dec. 177, 191, 630 N.E.2d 1301, 1315 (1994); *Vaughn v. State*, 833 S.W.2d 180, 186 (Tex.Crim.App.1992).

We therefore conclude that the trial court erred in refusing to excuse for cause a juror who had voiced actual bias, that defendant was prejudiced by the trial court's error because the biased juror sat on the jury that convicted him, and that defendant is therefore entitled to a new trial as he was denied the right to a fair and impartial jury.

JACKSON and ORME, JJ., concur.

---

4. Defendant used all of his four peremptory challenges to remove women from the jury.

5. We note that in cases tried post-*Menzies*, the doctrine of invited error poses a greater analytical challenge. We leave that question for a later day. However, we disagree with the State's contention that it is necessary to impose the requirement that defense attorneys peremptorily strike jurors they have objected to for cause in order to discourage invited error. This argument presumes that defense attorneys will gamble with their client's liberty by not removing a juror they deem biased on the chance that an appellate court will agree the juror was indeed biased. We cannot make such a presumption. Furthermore, a defense attorney's power to cure a clear trial court error is not unfettered. When prospective jurors cannot be challenged for cause, but nevertheless appear to be more adverse to the defendant than jurors for whom a valid for-cause challenge can be made, the defense attorney must, in the interest of impanelling the best jury, remove the more adverse jurors. If defendant's peremptory challenges are exhausted in this way, defense counsel has, in effect, no power to cure a trial court's erroneous refusal to excuse for cause a clearly biased juror: he or she must use the peremptories to remove the jurors deemed most potentially damaging to the defendant, whether they are jurors who can be validly challenged for cause or not.