**STATE of Utah, Plaintiff and Petitioner,**

v.

**Mark Joseph BAKER, Defendant and Respondent.**

No. 940569.

Supreme Court of Utah.

March 21, 1997.

Jan Graham, Atty. Gen., J. Kevin Murphy, Asst. Atty. Gen., E. Neal Gunnarson, Salt Lake City, for plaintiff and petitioner.

Robert K. Heineman, Salt Lake City, for defendant and respondent.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

HOWE, Justice:

The State seeks review of a court of appeals decision vacating defendant Mark Baker's convictions for rape of a child and sodomy on a child on the ground that one of the jurors who convicted Baker was biased. *State v. Baker*, 884 P.2d 1280 (Ct.App.1994), *cert. granted*, 892 P.2d 13 (Utah 1995). We granted certiorari to address the narrow legal question of whether a convicted criminal defendant is entitled to reversal on appeal when the trial court erroneously denied a for-cause challenge and the defendant failed to cure the error by exercising a peremptory challenge against the juror challenged for cause, but instead used all his peremptory challenges to exclude other potential jurors whom he had not challenged for cause.

### FACTS

The relevant facts are not disputed. The State charged Baker with raping and sodomizing H.H., his young stepdaughter. During voir dire, three jurors, numbers 15, 17, and 19, indicated that they would be unable to remain impartial to evidence concerning sexual abuse of a child. Juror 19 stated that his sister had been raped and sodomized approximately ten years earlier when she was eight years old. The trial judge asked these three

jurors whether they could "set aside" their personal experiences and "give the State and the defendant a fair and impartial trial." They indicated that they could not. The judge then summarily repeated his prior admonitions and asked the jurors en masse to respect these admonitions. Again, the judge asked if there were any jurors who could not listen to the evidence and make an impartial decision. Juror 19 then withdrew his prior affirmative admission of bias. Jurors 15 and 17 indicated, however, that they could not make an impartial decision, and they were excused for cause. Although defendant also challenged juror 19 for cause and apparently the State did not oppose the challenge, the trial court denied it. Neither Baker nor the State used a peremptory challenge to remove juror 19. Baker subsequently used all four of his peremptory challenges to remove four women prospective jurors. Consequently, juror 19 sat on the jury that convicted Baker.

Following his conviction, Baker appealed to this court, and we transferred the case to the court of appeals. That court held that the trial court committed reversible error by failing to remove juror 19 for cause. *Baker*, 884 P.2d at 1287. The court further determined that *State v. Menzies*, 889 P.2d 393 (Utah 1994), decided three years after Baker's 1991 trial, applied retroactively to Baker's case. *Baker*, 884 P.2d at 1284. However, the court then distinguished *Menzies* on its facts, *id.* at 1285, and held that because a biased juror participated on the jury that convicted Baker, he had been prejudiced. *Id.* at 1287. Therefore, the court vacated his conviction and ordered a new trial. *Id.* We granted the State's petition for a writ of certiorari.

The State asks this court to adopt a "cure or waive" rule. Under that rule, a defendant whose for-cause challenge has been erroneously denied would have to attempt to "cure" that error or be held to have "waived" it. Specifically, if the defendant had a peremptory challenge available, he or she would have to use it on the challenged juror. If the defendant did not so use the peremptory, then the error would be deemed waived. Moreover, because *Menzies* held that no ground for reversal exists unless a biased

juror is actually retained on the panel, the issue would be preserved for appeal only if the number of jurors the trial court erroneously refused to dismiss for cause exceeded the number of peremptories available to the defendant.

## ANALYSIS

### A. Status of Peremptory Challenges

■ The court of appeals declined to adopt the cure-or-waive rule. Whether this rule should be adopted is a question of law which this court must decide de novo. *State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

The peremptory challenge was created by rule and is designed to facilitate the seating of a jury that will listen without bias to the evidence and do justice to both parties. Utah Rule of Criminal Procedure 18(d) provides in pertinent part: "A peremptory challenge is an objection to a juror for which no reason need be given. In capital cases, each side is entitled to 10 peremptory challenges. In other felony cases each side is entitled to four peremptory challenges." The State contends that defendant should have used one of his four available peremptory challenges to remove juror 19 after the trial court failed to excuse that juror for cause. Defendant responds that such a requirement would force him to accept a less favorable jury because he then could not have removed all four of the women against whom he subsequently exercised his peremptory challenges.

■ Neither the United States Constitution nor the Utah Constitution provides a right to a certain number of peremptory challenges, or indeed to any at all. Likewise, neither constitution guarantees a defendant the "most favorable" jury. The trial rights that these constitutions do provide are clearly stated in their texts. Amendment VI of the United States Constitution guarantees "the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." Article I, section 12 of the Utah Constitution provides the accused the right "to have a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

Neither constitution specifies peremptory challenges as the mechanism for obtaining the promised impartial jury.

We recognized the nonconstitutional status of the peremptory challenge in *Menzies,* 889 P.2d at 398, when we overruled *Crawford v. Manning,* 542 P.2d 1091 (Utah 1975), which held that "reversal is required whenever a party is compelled 'to exercise a peremptory challenge to remove a panel member who should have been stricken for cause.'" 889 P.2d at 398. The trial court in *Menzies* denied the defendant's for-cause challenge of several prospective jurors. Menzies responded by peremptorily removing them. After the jury returned a guilty verdict, Menzies appealed, arguing that the trial court committed error under *Crawford's* rule. We overturned *Crawford's* automatic reversal rule in favor of "the approach utilized by a majority of the states and upheld by the federal courts," *id.,* which the United States Supreme Court employed to "reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury." *Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988). Because Menzies exercised his peremptory strikes to remove the prospective jurors he found objectionable and did not assert that any of the jurors who ultimately sat were prejudiced, we held that any error of the trial court in failing to remove the jurors for cause was harmless. 889 P.2d at 400. Thus *Menzies* rejects the notion that peremptory strikes are constitutionally unfettered and holds that a defendant waives error by exercising peremptories to achieve an impartial jury. As the authorities embraced in *Menzies* explain, "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the [Constitution] was violated." *Ross,* 487 U.S. at 88, 108 S.Ct. at 2278 (citing *Hopt v. Utah,* 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708 (1887)). After *Menzies,* "[t]o prevail on a claim of error based on the failure to remove a juror for cause, a defendant must demonstrate prejudice, *viz.,* show that a member of the jury was partial or incompetent." 889 P.2d at 398.

Baker argues that the jury which convicted him was not impartial. Nonetheless, he had a fair opportunity to cure this bias through the use of one of his peremptory challenges. Unlike the defendant in *Menzies,* however, Baker did not use a peremptory strike to remove the biased juror when the trial court denied his for-cause challenge. Instead, Baker's counsel subsequently chose to use his peremptories to remove from the panel four women whom he had not challenged for cause. Baker states that this decision was a strategy designed to assemble "the best jury he could" but that through no fault of his own and as a result of the trial court's error, "that jury was unconstitutionally biased." The United States Supreme Court has observed, however, that "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). Under *Menzies* and *Ross,* the peremptory is not constitutionally guaranteed. It is an important tool designed to foster an impartial jury. However, Baker failed to use this tool. Consequently, his own inaction waived his objection to the empaneling of juror 19, just as it would have—pursuant to *Menzies*—if he had chosen to remove the juror and was unable to show on appeal that the use of his peremptory challenge compelled him to accept a biased juror. In short, after our decision in *Menzies,* the privilege of unfettered peremptory challenges must remain subordinate to a party's best efforts to seat an impartial jury.

### B. *Policy Arguments*

Baker insists that the cure-or-waive rule invites "bizarre results." For example, he argues that the rule "would require the defendant and defense counsel to take affirmative action to ensure that any conviction obtained will stand up on appeal," thereby placing defense counsel in an ethical dilemma. According to Baker, the defense's duties are to seek an acquittal or, failing that, to preserve error so as to obtain a new trial. He suggests that it was the prosecution's responsibility to use a peremptory to remove the challenged juror when the defense failed to do so. Baker's argument ignores the fact that all parties, including the

defense, have a duty not to sow error and that obtaining a jury most favorable to the defense is certainly no part of the prosecution's duty. Both parties and the court share a duty to help ensure a *fair trial*—a trial in which a jury impartially weighs the evidence. Here, the prosecution may well have been convinced, as the trial court apparently was, that juror 19 could act without bias, and Baker's own actions did nothing to dispel that notion. His failure to use a peremptory challenge to remove juror 19 was, in effect, a tactical withdrawal of his objection. In such a situation, we cannot expect the prosecution to be clairvoyant and somehow divine that it should use one of its own peremptories to remove the juror. Therefore, requiring the *defendant* in a criminal action to remove those jurors whom he perceives as biased against him is the most practical way to facilitate an impartial jury. As Associate Chief Justice Stewart emphasized in his concurring and dissenting opinion in *Menzies:*

> [I]f a trial judge errs in not striking a juror on a for-cause challenge and a defendant then expends a peremptory challenge to remove that juror, reversal may still be required if the defendant can demonstrate actual prejudice in having lost the peremptory challenge. Concededly, it will be much more difficult to establish reversible error under this rule, but the cost of reversing a conviction for an error of the trial judge that is corrected by a peremptory challenge with no demonstrable prejudice to the defendant is too great, if not irrational.

889 P.2d at 407 (Stewart, J., concurring in part and dissenting in part). Justice Stewart reasoned that an automatic assumption of prejudice to a defendant who must use a peremptory strike to remove a juror challenged for cause was irrational. Yet it is equally, if not more, irrational to give the benefit of an assumption of prejudice to a defendant who has not even attempted to protect the impartiality of the jury through the use of peremptory challenges.

■ In addition, if a defendant needs to show only that he used all of his peremptories and that a biased juror sat, as Baker advocates, there is a great temptation to sow error. A defendant whose for-cause challenge is erroneously denied by the trial court could always generate reversible error merely by expending all of his peremptories on other jurors, adverse or not. Therefore, Justice Stewart's common-sense observation explains the proper post-*Menzies* procedure. To preserve the issue on appeal, a defendant whose for-cause challenge has been denied must exercise a peremptory challenge, if one is available, to achieve a legally impartial jury. If the defendant can later show that the "loss" of the peremptory challenge resulted in actual prejudice, reversal would be an available and appropriate remedy. The cure-or-waive rule does not create bizarre results but helps avoid them.

### C. Precedent

■ Baker ignores *Ross v. Oklahoma* and other cases cited below to argue a lack of precedent for the rule advocated by the State. While the exact fact pattern before us here has not been previously adjudicated in Utah, it is well accepted that a defendant waives the right to raise on appeal a juror's competence or impartiality by failing to object to the juror at trial. *See, e.g., State v. DeMille,* 756 P.2d 81, 83 (Utah 1988); *State v. Miller,* 674 P.2d 130, 131 (Utah 1983) (per curiam); Utah R.Crim. P. 12(d), 18(c)(2). In *People v. Hopt,* a challenged juror was not peremptorily dismissed by the defendant, even though the defense did not use all its peremptory strikes and could have removed the objectionable juror. This court held that "[u]ntil [the defendant] had exhausted his peremptory challenges, he could not complain" about the composition of the jury. *People v. Hopt,* 4 Utah 247, 250, 9 P. 407, 408 (1886), *aff'd,* 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708 (1887). Although Baker ultimately did exhaust his challenges, he had not used any of them when the trial court denied his for-cause challenge of juror 19.[1] It is consistent with *Menzies'* rejection of automatic

---

1. Under our rules, peremptory challenges are not exercised until for-cause challenges are decided.

Utah R.Crim. P. 18(f).

reversal to require Baker to use an available peremptory strike to remove juror 19 before he can "complain" about the jury's bias on appeal.

Other jurisdictions grappling with the Supreme Court's decision in *Ross v. Oklahoma* have announced rules similar to this court's decision in *Menzies*. In some instances, courts have anticipated the issue Baker raises here. For example, in *People v. Bittaker,* 48 Cal.3d 1046, 774 P.2d 659, 682, 259 Cal. Rptr. 630, 653 (1989), the California Supreme Court reacted to *Ross* by setting forth its version of *Menzies'* harmless error rule: "[I]f [a criminal defendant] can actually show that his right to an impartial jury was affected because he was deprived of a peremptory challenge which he would have used to excuse a juror who sat on his case, he is entitled to reversal." However, *Bittaker*'s progeny, including *People v. Crittenden,* 9 Cal.4th 83, 36 Cal.Rptr.2d 474, 885 P.2d 887 (1994), employ a three-pronged test which has to be met before a defendant can show that the right to a fair and impartial jury was affected. "Initially, *a defendant must establish that he or she exercised a peremptory challenge to remove the juror in question,* exhausted the defendant's peremptory challenges, and communicated to the trial court the defendant's dissatisfaction with the jury selected." *Id.* 36 Cal.Rptr.2d at 494, 885 P.2d at 906–07 (emphasis added); *see also People v. Morris,* 53 Cal.3d 152, 279 Cal. Rptr. 720, 807 P.2d 949, 965 (1991). Similarly, in *Catando v. Sheraton Poste Inn,* 249 N.J.Super. 253, 592 A.2d 294 (App.Div.1991), the Appellate Division of the New Jersey Superior Court rejected *Crawford*'s automatic reversal approach. Citing *Ross,* the court adopted the rule that in civil cases, if a challenge for cause is erroneously denied *but the party does not use an available peremptory challenge to excuse the juror, the error is harmless;* if all peremptory challenges have already been exhausted, and the challenged juror therefore sits, the error requires reversal; if the party unsuccessfully challenging the juror for cause thereafter uses a peremptory challenge to excuse him, exhausts all peremptory challenges, and makes a clear showing on the record of a desire to excuse anoth-

er, subsequently summoned juror ... to whom the party objects for ... articulated reasons, the erroneous denial of the excuse for cause becomes reversible error.

*Id.* 592 A.2d at 300. A Florida court also has noted that "not every erroneous denial of a challenge for cause is recognized as reversible error." *Longshore v. Fronrath Chevrolet, Inc.,* 527 So.2d 922, 923 (Fla.Dist.Ct.App. 1988). Therefore, in an attempt to provide "predictability" in determining when the issue is preserved, Florida requires that a party exhaust his or her peremptory challenges and subsequently make a request for additional challenges which is denied by the trial court. *Id.; see also Hill v. State,* 477 So.2d 553, 556 (Fla.1985) (reversible error when defendant forced to use peremptory to strike juror challenged for cause only if peremptories all exhausted and additional challenge sought and denied). These authorities adopt options that—like the State's proposed cure-or-waive rule—are both consistent with the more restricted nature of the peremptory challenges enunciated by *Ross* and *Menzies* and cognizant of fact scenarios like Baker's failure to remove juror 19.

### D. Retroactive Application

Baker contends that even if we adopt the cure-or-waive rule, it should not apply to this case. He cites *State v. Hoff,* 814 P.2d 1119, 1123 (Utah 1991), for the proposition that "[w]hen a new rule of criminal procedure constitutes a clear break with the past, it is not generally applied retroactively." He attempts to characterize the rule as "an abrupt and fundamental shift in doctrine" under *United States v. Johnson,* 457 U.S. 537, 551, 102 S.Ct. 2579, 2588, 73 L.Ed.2d 202 (1982), and cites various cases in which changes in criminal procedure were not applied to cases tried before the change. Additionally, he argues that state procedural rules which were not announced at the time of trial cannot be used to block review of federal constitutional claims and that therefore applying the cure-or-waive rule to his Sixth Amendment claim of a biased jury would violate due process. In so doing, Baker misreads the law because (1) here there is no "clear break with the past" or "abrupt and

fundamental shift in doctrine," (2) application of a new rule to the very case in which it is announced is not retroactive application, and (3) he has no federal constitutional claim.

First, the cure-or-waive rule does not represent a clear break with the past or a fundamental shift in doctrine. It is merely the logical extension of existing doctrine. Under *Menzies* and *Ross*, a defendant is already required to show that he had exhausted all of his peremptory strikes and that a biased jury actually sat. This rule provides that a defendant waives his objection to a juror by failing to exercise the means at hand—a peremptory strike—to remove the juror and that an objection thus waived is not preserved for appeal. "In general, the Court has not subsequently read a decision to work a 'sharp break in the web of the law' unless that ruling caused 'such an abrupt and fundamental shift in doctrine as to constitute an entirely new rule which in effect replaced an older one.'" *Johnson*, 457 U.S. at 551, 102 S.Ct. at 2588 (quoting *Milton v. Wainwright*, 407 U.S. 371, 381 n. 2, 92 S.Ct. 2174, 2179–80 n. 2, 33 L.Ed.2d 1 (1972) (Stewart, J., dissenting); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 498, 88 S.Ct. 2224, 2234, 20 L.Ed.2d 1231 (1968)). Furthermore, "[s]uch a break has been recognized only when a decision explicitly overrules a past precedent of this Court, or disapproves a practice this Court arguably has sanctioned in prior cases." *Id.* (citations omitted). Such is not the case here. There has been no rule covering the instance of a defendant who exhausted all of his peremptories subsequent to allowing a biased juror to sit. The only rule ever formulated for this situation, as far as we know, is the one we adopt now. Thus Baker cannot successfully argue that he relied to his detriment upon a previous rule, because there was none, and the rationale for the "clear break" rule is missing. The cure-or-waive rule merely fills a vacuum in the law by extending preexisting principles from past cases of this court. If this rule does not apply to the instant case, there is no rule that does.

■ Second, Baker confuses retroactivity with application to the case at bar. Indeed, retroactive application of the cure-or-waive rule as here employed would be factually impossible because there has been no prior appeal to this court by a defendant who failed to employ available peremptories to cure the trial court's denial of a for-cause challenge and then subsequently used them to remove jurors who were not challenged for cause. The issue here is not retroactivity, but the application of the new cure-or-waive rule to the case *currently* before the court. A new rule announced on direct appeal typically applies to the case in which it is announced. *See State v. Ramirez*, 817 P.2d 774, 781–82 (Utah 1991) (new state constitution-based rule for eyewitness identification testimony found satisfied); *State v. Larocco*, 794 P.2d 460, 470–71 (Utah 1990) (state constitution-based "automobile search rule" and exclusionary remedy applied upon first announcement); *State v. Gibbons*, 740 P.2d 1309, 1313 (Utah 1987) (new rule for taking guilty pleas applied, allowing defendant to withdraw his plea); *State v. Lafferty*, 749 P.2d 1239, 1259–61 (Utah 1988) (new rule for admission of "other crimes" evidence in capital sentencing hearing found satisfied), *habeas corpus granted on other grounds, Lafferty v. Cook*, 949 F.2d 1546 (10th Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1942, 118 L.Ed.2d 548 (1992). Although the cases here cited involved defendant-favoring rules, in *Menzies*, we applied a new rule favoring the prosecution to the case then before us. Thus, under standard appellate procedure, the cure-or-waive rule applies to the current case.

Third, Baker has no surviving constitutional claim. The Sixth Amendment guarantees an accused the right to an impartial jury, and Baker had the means at hand to avail himself of that guarantee. Instead, he followed the will-o-the-wisp of the "most favorable" jury, for which there is no constitutional support. "The law cannot force a right upon a defendant who turns his back upon it," *State v. Anderson*, 929 P.2d 1107, 1111 (Utah 1996), and Baker, having turned his back on the means to secure his right, has no constitutional claim. Therefore, it is irrelevant in this case whether a newly articulated state policy could be applied to a federal constitutional claim.

## CONCLUSION

■ We acknowledge and agree with the concurring and dissenting opinions in encouraging trial judges to heed the direction that we have already given them to grant for-cause challenges when bias is shown. *See State v. Carter*, 888 P.2d 629, 649–50 (Utah), *cert. denied*, —— U.S. ——, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995). We adopt the cure-or-waive rule and hold that in order to preserve the error on appeal, a criminal defendant must exercise a peremptory challenge, if one is available, against the juror unsuccessfully challenged for cause. In so doing, we reverse the decision of the court of appeals and affirm the conviction by the trial court.

RUSSON, J., concurs.

STEWART, Associate Chief Justice, concurring:

I concur in Justice Howe's opinion and write only to observe that there are, I believe, circumstances in which the cure-or-waive rule will not be adequate to assure the selection of a fair and impartial jury. Prior to *Menzies,* this Court struggled in a number of cases where trial courts made highly problematic rulings with respect to for-cause challenges by defense counsel, and this Court, being reluctant to overturn the conviction, stretched the law to the breaking point in seeking to justify the trial court's ruling. In my view, it is absolutely imperative that trial judges once and for all realize that for cause challenges to jurors should be viewed liberally. As with judges, the issue is not only whether jurors are in fact biased but also whether they might be perceived as biased. Because of our past history in this area, I am simply not persuaded that this Court can entirely withdraw from the area of ruling on the validity of trial court for-cause rulings by shifting to defense counsel the obligation to cure a trial judge's error by exercising a peremptory challenge or waive that error. I am not at this point prepared to state just when or how such a policy should be effected. I am satisfied, however, that the cure-or-waive rule is properly applied in this case.

ZIMMERMAN, Chief Justice, dissenting:

I respectfully dissent. On balance, I conclude that the disadvantages of adopting the cure-or-waive rule outweigh its benefits. The State argues that the cure-or-waive rule will discourage the planting of reversible error because the defendant who makes the tactical decision to utilize his or her peremptory challenges to remove jurors other than those challenged for cause must live with that tactical decision, irrespective of the verdict. Thus, the State argues, the cure-or-waive rule avoids rewarding a defendant for "sabotaging his own trial."

I concede that the cure-or-waive rule would prevent the planting of error as a backstop against a guilty verdict. However, I do not find this justification for the rule particularly strong. I think it far more realistic to presume that defense counsel ordinarily will choose to strike a biased juror in the hope of avoiding a conviction rather than risking a conviction by calculatingly permitting a biased juror to sit and hoping for reversal on appeal. Defense counsel's primary duty is to seek an acquittal, not a reversible conviction. Therefore, I deem the benefits of the cure-or-waive rule to be rather speculative.

In contrast, the disadvantages of the cure-or-waive rule are significant. In *State v. Menzies,* 889 P.2d 393, 400 (Utah 1994), this court recognized that trial judges often are reluctant to strike jurors. *See also State v. Carter*, 888 P.2d 629, 649–50 (Utah) (noting concern with "trial courts' frequent insistence on passing jurors for cause . . . when legitimate concerns about their suitability have been raised during voir dire"), *cert. denied*, —— U.S. ——, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995). There may be various reasons for this reluctance, including administrative convenience and a desire not to permit people to easily avoid the burdens of jury service. Whatever the reasons, an undue reluctance to strike challenged jurors may, in the long run, result in convictions that do not stand up on appeal. *Id.* at 650. As this court noted in *Jenkins v. Parrish,* 627 P.2d 533, 536 (Utah 1981), "[I]t is a simple matter to obviate any problem of bias simply by excusing the prospective juror and

selecting another." Accordingly, in *Carter*, we strongly advised trial courts "to be more conservative ... when making for-cause determinations." *Carter*, 888 P.2d at 650. I would reiterate that advice today.

The majority's adoption of the cure-or-waive rule also tends to provide an additional incentive to trial judges *not* to strike jurors challenged for cause. The rule ensures not only that a conviction will not be reversed, but also that the trial court will not be held accountable for erroneously denying a for cause challenge, so long as the defendant has at least one peremptory challenge left. We should be loath to create a mechanism that could be seen as giving trial judges the ability to force defendants to use all their peremptories to cure trial court refusals to strike biased jurors. This is completely inconsistent with the fact that empaneling impartial jurors is primarily the responsibility of the trial judge. *Id.* at 649–50.

The State also argues that adopting the cure-or-waive rule will promote symmetry in criminal trials because the State is, in effect, already subject to the rule. Specifically, if the State's for-cause challenge is denied, it is compelled to exercise a peremptory strike to avoid the operation of double jeopardy principles and statutory limitations that would prevent retrial if the biased juror sits and the defendant is acquitted.

In making this argument, the State assumes that some such symmetry is an unspoken premise of American criminal law. But history is to the contrary. Peremptory challenges and the criminal trial as a whole were never meant to be an even balance between the State and the defendant.

From its inception in English common law, long before the founding of this country, the peremptory challenge was characterized as an "arbitrary and capricious" right "full of that tenderness and humanity to prisoners, for which our English laws are justly famous." 4 William Blackstone, *Commentaries on the Laws of England* 353 (15th ed. 1809). According to Blackstone, peremptory challenges were granted to defendants for

two reasons: first, because of sudden impressions and unaccountable prejudices that the defendant may have against potential jurors and, second, because questioning in for-cause challenges may sometimes provoke resentment if the for-cause challenge is denied and the juror sits. *Id.*

This English common law history influenced the development of the peremptory challenge in this country.[1] The founders of this nation believed that a defendant's peremptory challenge right was such a fundamental precept of American common law that the language proposed for the Sixth Amendment in 1789 included "the right of challenge and other accustomed prerequisites." Gazette of the United States, Aug. 29, 1789, at 158. While the Sixth Amendment as ratified does not mention the defendant's right to peremptory challenges, Congress effectively codified the common law rule in 1790 by granting defendants thirty-five peremptory challenges in trials for treason and twenty in trials for other enumerated felonies. Act of Apr. 30, 1790, ch. 9, § 30, 1 Stat. 119. Notably, the federal statute denied peremptory challenges to the government. *Id.* Congress did not change this practice until 1865, when it provided the government a limited number of peremptory challenges in federal criminal trials. Act of Mar. 3, 1865, ch. 86, § 2, 13 Stat. 500 (1865). The states soon followed suit and enacted statutes granting peremptory challenges to the prosecution. The number of peremptory challenges granted to the government, however, was often fewer than the number afforded the defendant.

Thus, while at times the prosecution has not been afforded peremptory challenges by statute, peremptories have always been a defendant's right. *See Swain v. Alabama*, 380 U.S. 202, 214–17, 85 S.Ct. 824, 832–34, 13 L.Ed.2d 759 (1965) (detailing origins of peremptory challenges in United States), *overruled by Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). I therefore find no merit to the State's argument that rules regarding peremptories

---

1. For a detailed account of the history and development of the peremptory challenge in this country, see Douglas L. Colbert, *Challenging the Challenge: Thirteenth Amendment as a Prohibition Against the Racial Use of Peremptory Challenges,* 76 Cornell L.Rev. 1, 9–12 (1990).

should be designed to promote symmetry between the prosecution and the defense.

Having considered the policies at issue, I would conclude that the cure-or-waive rule should not be adopted. Therefore, I would affirm the court of appeals.

DURHAM, J., concurs.